Osvaldo A. Vargas (SBN: 312214)
VARGAS LAW FIRM
100 N. Citrus St., Suite# 505
West Covina, CA 91791
Phone: (626) 269-3432
Fax: (626) 364-7597
Email: ovargaslaw@gmail.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA DEL ROSARIO TORRES CERVANTES,<br><br>*Petitioner,*<br><br>vs.<br><br>WARDEN of Adelanto ICE Processing Center, in his official capacity; THOMAS GILES, in his official capacity as Acting Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; DAVID VENTURELLA, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; and TODD BLANCHE, in his official capacity as U.S. Attorney General,<br><br>*Respondents.* | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>**VERIFIED PETITION**<br><br>**PETITIONER'S DHS NO:**<br>A 234-926-448 |

## I. INTRODUCTION

1. Petitioner Maria del Rosario Torres Cervantes ("Petitioner" or "Maria") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging her unlawful civil immigration arrest on November 10, 2026, and her resulting and continuing detention by United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California.

2. This case concerns the fundamental limits Congress and the Constitution place upon the federal government's authority to arrest and imprison individuals for civil immigration purposes. Although ICE possesses statutory authority to enforce immigration law, that authority is constrained by the

Immigration and Nationality Act ("INA"), its implementing regulations, and the Fourth and Fifth Amendments.

3. Maria is a forty-year-old native and citizen of Mexico who last entered the United States on or about September 17, 2005, without inspection. She has resided in the United States for approximately twenty-one years. She has no prior order of removal, according to the immigration history presently provided to counsel. (Declaration of Maria del Rosario Torres Cervantes ("Maria Decl.") ¶ 9.)

4. For more than two decades, Maria has established her life in Southern California. She is married to a naturalized United States citizen, is the mother and primary caregiver of three United States citizen children, and has maintained longstanding employment, residential, and community responsibilities. (Maria Decl. ¶¶ 9, 10–24; Ex. A, Declaration of Juan Francisco Alvarado ("Alvarado Decl.") ¶¶ 2, 21–29; Exs. H–J.)

5. Maria has not hidden from immigration authorities or sought to evade the immigration process. She and her husband have affirmatively pursued her immigration case through USCIS and the United States Department of State. USCIS approved her husband's Form I-130 immigrant petition on August 11, 2023. The family's immigrant visa case is pending with the National Visa Center ("NVC"), and USCIS received Maria's Form I-601A application for a provisional unlawful-presence waiver on October 16, 2026. They also submitted a Form I-131F application under a program announced for certain spouses of United States citizens. USCIS issued a receipt notice dated August 25, 2024. (Maria Decl. ¶¶ 2–3, 8; Alvarado Decl. ¶ 3; Exs. C–G.)

6. On October 23, 2026, USCIS issued Maria a written biometrics appointment notice directing her to appear at the USCIS El Monte Application Support Center, 17843 Colima Road, City of Industry, California, on November 10, 2026, at 10:00 a.m. (Ex. B.)

7. Maria obeyed that directive. Her husband personally drove her to the facility, arriving at approximately 9:50 a.m. Although persons outside the building warned visitors that ICE officers were present, Maria did not turn around, attempt to evade immigration personnel, or abandon her appointment. She entered the facility voluntarily to complete the immigration process she had been instructed to pursue. (Maria Decl. ¶¶ 2–3, 6; Alvarado Decl. ¶¶ 4–6.)

8. While Maria was inside the USCIS facility, ICE officers approached her, took her into custody, placed her in handcuffs, and escorted her from the building. (Maria Decl. ¶ 4-11.) Her husband subsequently viewed a video recording showing Maria handcuffed and being escorted by officers. (Alvarado Decl. ¶¶ 8–9.)

9. Maria declares that the officers did not show her an arrest warrant or removal warrant, did not provide her a copy of any warrant, and did not explain whether a warrant had been issued. She further declares that they did not ask whether she intended to flee, whether she would attend future immigration proceedings, or whether she presented a danger to anyone. (Maria Decl. ¶¶ 4–15.)

10. When Maria sought an explanation for the arrest, she was told only that she was in the United States unlawfully. No officer explained any individualized reason requiring her immediate detention at the scheduled appointment. (Maria Decl. ¶ 4-15.)

11. An ICE officer separately telephoned Maria's husband, Juan Francisco Alvarado, confirmed her apprehension, and identified her unlawful immigration presence as the reason for detention. The officer did not identify any particularized escape risk, public-safety threat, outstanding removal order, or circumstance preventing officers from obtaining an administrative arrest warrant before the appointment. (Alvarado Decl. ¶¶ 10–14.)

12. Following her arrest, Maria was transported to an ICE facility at approximately 300 North Los Angeles Street, Los Angeles, California, where she was processed and temporarily detained. (Maria Decl. ¶ 12; Alvarado Decl. ¶¶ 11, 15.)

13. Maria has since been transferred to the Adelanto ICE Processing Center in Adelanto, California. ICE's updated Online Detainee Locator System identifies her as being in custody at that facility. (Ex. N.)

14. Her transfer has not resolved the fundamental legal questions surrounding her arrest and continued confinement. She remains deprived of physical liberty, separated from her husband and children, and subject to the consequences of ongoing detention while the legality of her arrest and custody remains disputed.

15. Congress expressly limited ICE's warrantless civil arrest authority under 8 U.S.C. § 1357(a)(2). An immigration officer may arrest without a warrant only when the officer has reason to believe both

that the individual is present in violation of immigration law and that the individual is likely to escape before a warrant can be obtained.

16. The implementing regulation independently directs that an arrest warrant shall be obtained unless the officer has reason to believe the individual is likely to escape before one can be obtained. 8 C.F.R. § 287.8(c)(2)(ii).

17. Those statutory requirements cannot be satisfied merely by asserting that a person lacks lawful immigration status. The likelihood-of-escape inquiry is separate and must be supported by individualized circumstances known to officers before the warrantless arrest.

18. The circumstances of Maria's arrest strongly undermine any contention that immediate warrantless apprehension was necessary. The government knew her identity and mailing address, possessed her immigration application records, scheduled the appointment weeks in advance, and knew precisely where and when she would appear. Maria voluntarily attended despite warnings of ICE activity. (Maria Decl. ¶¶ 2–8; Alvarado Decl. ¶¶ 3–6; Exs. B–G.)

19. On September 2, 2026, this District entered a preliminary injunction in *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, Dkt. 738, concerning warrantless civil immigration arrests without a pre-arrest individualized determination of probable cause to believe the individual is likely to escape before a warrant can be obtained.

20. The injunction required consideration of the circumstances known before arrest and documentation of the particularized facts supporting the escape-risk determination.

21. The Central District recently granted immediate habeas relief in *Qu v. Janecha*, No. 5:26-cv-05419-CTS, Dkt. 10 (C.D. Cal. Oct. 9, 2026), involving individuals arrested at a scheduled USCIS biometrics appointment without a demonstrated lawful basis for warrantless apprehension.

22. Other decisions in this District, including *Barrios Chan v. Acting Warden*, Adelanto ICE Processing Center, No. 5:26-cv-04820-ACCV, Dkt. 12 (C.D. Cal. Sept. 25, 2026), and *Sanchez Marquez v. Warden*, No. 5:26-cv-05368-MBK, Dkt. 13 (C.D. Cal. Oct. 1, 2026), have likewise ordered immediate habeas release where the government failed to establish compliance with the applicable statutory arrest or individualized custody requirements.

23. Maria's claim is not limited to a retrospective challenge to the manner of her arrest. She challenges whether ICE lawfully initiated custody, whether it exercised its discretionary detention authority under 8 U.S.C. § 1226(a), whether it provided the individualized custody procedures required by federal law, and whether her present confinement is constitutionally justified.

24. The Fifth Amendment provides an independent basis for relief. Maria has enjoyed approximately twenty-one years of community liberty, maintained a longstanding marriage, raised three United States citizen children, and participated in documented immigration processing. She possesses substantial private liberty interests that must be considered when determining the procedures constitutionally required before or following detention. (Maria Decl. ¶¶ 9, 20–24; Alvarado Decl. ¶¶ 2–6, 21–29.)

25. Maria's detention has also caused serious medical, emotional, and family hardship. She suffers from anxiety, depression, kidney-related problems, fatty liver disease, prediabetes, nerve pain, and significant anxiety in enclosed spaces. She was arrested without her medications because she reasonably expected to return home after completing her biometrics appointment. (Maria Decl. ¶¶ 16–19; Alvarado Decl. ¶¶ 19–20.)

26. The consequences for her children are immediate and substantial. Her husband reports that following the arrest, the family's younger children experienced fevers and serious emotional distress, and the youngest child cried for hours and barely slept because he missed his mother. (Alvarado Decl. ¶ 26.)

27. Petitioner accordingly seeks the traditional habeas remedy: immediate release from unlawful physical custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

28. Alternatively, if the Court concludes that a constitutionally adequate custody hearing rather than immediate release is the appropriate remedy, Petitioner requests a prompt individualized hearing under § 1226(a), with the procedural safeguards required by the Constitution and governing law.

## **II. CUSTODY**

29. Petitioner is currently confined at the Adelanto ICE Processing Center in Adelanto, San Bernardino County, California, under the custody and control of ICE and its designated detention officials. (Ex. N.)

30. The Adelanto ICE Processing Center operates facilities at 10250 Rancho Road and 10400 Rancho Road, Adelanto, California 92301. Petitioner's precise housing location within the facility should be confirmed by Respondents. Petitioner is therefore in custody within the meaning of 28 U.S.C. § 2241(c)(1) and (c)(3).

## III. JURISDICTION AND VENUE

31. This Court possesses subject-matter jurisdiction under 28 U.S.C. § 2241 because Petitioner challenges custody allegedly imposed and maintained in violation of the Constitution and laws of the United States. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018).

32. Immigration detention claims seeking release from allegedly unlawful physical confinement fall within the traditional core of habeas corpus. *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024).

33. The Suspension Clause protects the writ as a mechanism for reviewing unlawful executive confinement. U.S. Const. art. I, § 9, cl. 2; *INS v. St. Cyr*, 533 U.S. 289, 301 (2001).

34. This Petition challenges the statutory and constitutional legality of custody. It does not request adjudication of Maria's immigrant visa application, provisional unlawful-presence waiver, removability, or any application for relief from removal.

35. According to the immigration history provided to counsel, Petitioner has no prior removal order. Moreover, on November 12, 2026, a search of the Executive Office for Immigration Review's Automated Case Information System using Petitioner's A-Number, A234-926-448, and nationality of Mexico returned the result, "No case found for this A-Number." (Ex. O.) Although the automated system does not display all immigration proceedings and is not conclusive evidence that no Notice to Appear or removal order exists, this result corroborates Petitioner's presently available information that no immigration court proceeding is identifiable through the public system. Petitioner requests that Respondents disclose any Notice to Appear, its date of service and filing with the immigration court, any prior removal order, and the asserted statutory basis for her present detention. This action challenges the legality of Petitioner's physical confinement rather than seeking review of any removal judgment.

36. The jurisdictional limitations in 8 U.S.C. § 1252 do not categorically preclude independent challenges to the legal authority for immigration detention and the procedures by which custody is imposed. *Jennings*, 583 U.S. at 293–95.

37. Section 1226(e) does not bar judicial consideration of whether the government has exceeded its statutory detention authority or violated constitutional requirements. Petitioner does not ask the Court merely to substitute its discretionary custody judgment for that of an immigration officer.

38. Venue and territorial habeas jurisdiction are proper in the Central District of California because Petitioner is physically confined at the Adelanto ICE Processing Center in San Bernardino County, within this District. 28 U.S.C. §§ 84(c), 2241(a).

39. The Court should also be informed immediately of any intervening transfer and its effect, if any, upon jurisdiction. The requested relief is individualized to Maria. Petitioner does not seek nationwide or class-wide injunctive relief.

## IV. PARTIES

***Petitioner***

40. Petitioner Maria del Rosario Torres Cervantes, A234-926-448, is a forty-year-old native and citizen of Mexico presently detained at the Adelanto ICE Processing Center. (Maria Decl. ¶ 1; Ex. N.).

***Respondents***

41. Warden is named in his official capacity as Warden of the Adelanto ICE Processing Center and is responsible for Petitioner's immediate physical confinement and implementation of any order directing release.

42. Respondent Thomas Giles is named in his official capacity as the Los Angeles ICE Field Office Director, subject to confirmation of the incumbent at filing. The Los Angeles field office exercises relevant authority over the local detention, transfer, and release decisions challenged here.

43. Respondent David Venturella is named in his official capacity as Acting Director of ICE, subject to confirmation of the incumbent at filing.

44. Respondent Markwayne Mullin is named in his official capacity as Secretary of the Department of Homeland Security.

45. Respondent Todd Blanche is named in his official capacity as Attorney General of the United States. The Attorney General supervises the Executive Office for Immigration Review, whose immigration judges conduct custody-redetermination proceedings.

46. All named officials are sued in their official capacities only. Their lawful successors are substituted as appropriate under Federal Rule of Civil Procedure 25(d).

## V. STATEMENT OF FACTS

### A.) Maria's Longstanding Residence, Marriage, and United States Citizen Family

47. Maria last entered the United States on or about September 17, 2005, without inspection, and has lived in Southern California for approximately twenty-one years. (Maria Decl. ¶ 9.)

48. She has no prior removal order based on the immigration history presently supplied for this Petition.

49. Maria and Juan Francisco Alvarado married on April 28, 2007. Their marriage is documented by a certified Los Angeles County marriage certificate. (Maria Decl. ¶ 20; Alvarado Decl. ¶ 2; Ex. I.)

50. Juan is a naturalized United States citizen. His Certificate of Naturalization establishes that he became a citizen on June 9, 2006. (Ex. H.)

51. The couple are the parents of three United States citizen children: Sophia, born 2010; Alondra, born 2014; and Kaiden, born 2019. Their California birth certificates document the children's births and parental relationship. (Maria Decl. ¶ 20; Alvarado Decl. ¶¶ 2, 21; Ex. J.)

52. Maria and her family have maintained longstanding residential and community relationships in Southern California. The family has lived at the apartment complex where Maria works as a property manager for approximately fifteen years. (Maria Decl. ¶¶ 20–24; Alvarado Decl. ¶ 27.)

53. Maria handles tenant communications, addresses residents' concerns, coordinates maintenance, and assists with the daily operations of the property. Her work provides a housing benefit important to the family's financial stability. (Maria Decl. ¶¶ 20–24; Alvarado Decl. ¶ 27.)

54. Maria is responsible for much of her children's daily care, including meals, school activities, homework, transportation, supervision, and emotional support. (Maria Decl. ¶¶ 20–24; Alvarado Decl. ¶ 21.)

55. Juan works full time as a gardener for the Rowland Unified School District. His early work schedule limits his ability to assume the children's daily care without risking the income upon which the family depends. (Alvarado Decl. ¶ 22.)

56. Juan has been diagnosed with Major Depressive Disorder and Generalized Anxiety Disorder and experiences substantial chronic back pain and headaches. Maria provides important daily emotional and practical support. (Maria Decl. ¶ 22; Alvarado Decl. ¶ 24.)

57. Their oldest child has previously experienced emotional difficulties associated with the possibility of separation from her mother. Maria expresses particular concern that continued detention will worsen those difficulties and disrupt her children's established routines. (Maria Decl. ¶ 21; Alvarado Decl. ¶ 23.)

58. After Maria's arrest, Juan observed that the younger children developed fevers and experienced acute distress. The youngest child cried for hours during the night and struggled to sleep because he wanted his mother home. (Alvarado Decl. ¶ 26.)

59. These events demonstrate the immediate family harm arising from Maria's confinement. Petitioner does not claim a medical diagnosis establishing that the detention caused the children's fevers; Juan's declaration establishes his observations of their illness and emotional distress.

60. Maria's detention has consequently disrupted the care of three United States citizen children, removed essential support from her husband, and jeopardized the family's housing and work arrangements. (Maria Decl. ¶¶ 20–24; Alvarado Decl. ¶¶ 21–27.)

**B.) Maria's Documented Immigration Applications and Government Compliance**

61. Juan filed a Form I-130 immigrant petition on Maria's behalf, with a priority date of September 19, 2022. USCIS approved the petition on August 11, 2023. (Ex. D.)

62. The approval notice identifies Maria as the beneficiary of the petition submitted by her United States citizen spouse and reflects referral to the National Visa Center for further processing. (Ex. D.)

63. The Department of State identifies the family's immigrant visa case as CDJ2023743162, classified IR1 and assigned for consular processing in Ciudad Juárez, Mexico. (Ex. F.)

64. The family's records document subsequent National Visa Center processing and payment activity in October 2026. (Exs. F–G.)

65. On October 16, 2026, USCIS received Maria's Form I-601A application for a provisional unlawful-presence waiver. USCIS issued a receipt notice dated October 20, 2026. (Ex. C.)

66. The I-601A application does not confer lawful immigration status. Its relevance is that Maria was actively pursuing established immigration procedures, providing her information to government agencies, and complying with the steps required for processing.

67. USCIS issued a biometrics appointment notice dated October 23, 2026, directing Maria to appear at the USCIS El Monte Application Support Center in City of Industry on November 10, 2026, at 10:00 a.m. (Ex. B.)

68. The notice warned that failure to appear could adversely affect processing of her pending application. Maria attended because she intended to comply with that requirement. (Maria Decl. ¶¶ 2–3; Alvarado Decl. ¶¶ 3–6; Ex. B.)

69. These documentary records establish that the government possessed Maria's identity, mailing address, immigration petition history, and specific appointment date, time, and location.

70. They also demonstrate that Maria had substantial incentives to remain available to immigration authorities and complete the process that she and her husband had pursued for years.

**C.) The November 10, 2026 ICE Arrest**

71. On November 10, 2026, Maria attended the USCIS biometrics appointment connected to her I-601A application. Her husband drove her to the City of Industry facility, and they arrived at approximately 9:50 a.m. (Maria Decl. ¶ 2; Alvarado Decl. ¶ 4.)

72. Maria entered voluntarily, intending to complete her biometrics and return to her husband and children. (Maria Decl. ¶ 3.)

73. Juan remained outside the facility because he was not permitted to accompany her inside. (Alvarado Decl. ¶ 5.)

74. Persons outside warned visitors that ICE personnel were nearby. Maria nevertheless attended rather than abandoning the appointment. (Alvarado Decl. ¶ 6.)

75. Juan then observed three masked men exit a black four-door vehicle and enter the USCIS building. (Alvarado Decl. ¶ 7.)

76. Maria personally declares that upon approaching the USCIS facility, a security employee opened the door and instructed her to enter. The employee directed her to turn off her cellular telephone, and Maria complied. While waiting in line for biometrics processing, Maria observed a woman who appeared to be a supervisor leave the public service area and enter an office behind the counter. Maria's identification documents were taken into that office. At that point, Maria had not been fingerprinted or photographed and was still waiting to complete her USCIS appointment. (Maria Decl. ¶ 4.)

77. Shortly afterward, three ICE officers entered the USCIS facility and proceeded into the same office area where Maria's documents had been taken. One officer approached Maria, called out "Torres," and directed her to enter the office. Maria immediately complied. Inside, the officer directed her to sit in a particular chair, addressed her by name, referred to her date of birth, and informed her that he was there to arrest her. Maria obeyed his instructions without resistance. (Maria Decl. ¶ 5.)

78. Maria was shocked and began crying. Before taking her into custody, the officers did not show or explain any arrest warrant or removal warrant, did not explain the specific legal grounds for her apprehension, and did not question her concerning her personal circumstances. Maria states that, to her knowledge, no individualized assessment of danger, flight risk, or likelihood of future appearance was performed. (Maria Decl. ¶¶ 6–7.)

79. Maria was asked whether she intended to resist or oppose the arrest. She replied that she understood the officer had a job to perform and that she did not believe she could change what was happening. She remained calm and cooperative despite her emotional distress. She did not resist, threaten anyone, attempt to flee, or refuse an instruction. (Maria Decl. ¶ 8.)

80. Maria was not provided a copy of any warrant or informed whether one had been issued. She remains unaware of the asserted warrant authority underlying her arrest. During communications involving Maria and Juan, the officers discussed the distinction between pursuing immigration benefits and possessing lawful immigration status, but did not identify an individualized reason

why Maria had to be arrested at that appointment or kept in physical custody. (Maria Decl. ¶¶ 7, 10–11; Alvarado Decl. ¶¶ 10–14.)

81. Separately, Juan was shown a recording by a person outside the facility. He recognized Maria in handcuffs and being escorted by officers toward the rear portion of the building. (Alvarado Decl. ¶¶ 8–9.)

82. Approximately fifteen minutes later, Juan received a call from a person identifying himself as the ICE officer who detained Maria. The officer confirmed the apprehension and stated that Maria was being transported to Los Angeles. (Alvarado Decl. ¶¶ 10–11.)

83. Juan asked the officer why his wife had been arrested, noting that she had no known criminal history and was actively pursuing her immigration case through counsel. The officer answered, in substance, that Maria was present in the United States unlawfully. (Alvarado Decl. ¶ 12.)

84. The officer identified no particularized risk that Maria would escape before a warrant could be obtained, no criminal conduct, no threat to the public, and no outstanding removal order. (Alvarado Decl. ¶¶ 12–13.)

85. Maria's firsthand testimony and Juan's separate account therefore establish that neither was provided an individualized explanation demonstrating the necessity of the immediate arrest at the government-scheduled appointment. (Maria Decl. ¶¶ 4–9; Alvarado Decl. ¶¶ 12–14.)

86. Petitioner does not claim personal knowledge of the complete contents of ICE's internal arrest records. The existence, issuance time, authorizing official, and contents of any administrative warrant remain matters requiring disclosure by Respondents.

87. Petitioner likewise requests production of any contemporaneous record identifying the facts relied upon to conclude that Maria was likely to escape before a warrant could be obtained.

**D.) Initial Los Angeles Custody and Subsequent Transfer to Adelanto**

88. Following her arrest, Maria was placed in handcuffs and transported from City of Industry to an ICE processing facility at approximately 300 North Los Angeles Street, Los Angeles, California. During transportation, she experienced severe emotional distress, cried, and struggled to control her breathing. She remained handcuffed and continued complying with officers' instructions. (Maria Decl. ¶ 12.)

89. After arriving at the Los Angeles facility, another officer began processing Maria's information. He entered information into a computer system, fingerprinted her, and photographed her. Maria specifically declares that those procedures had not been performed at the USCIS biometrics appointment where she was arrested. (Maria Decl. ¶ 14.)

90. During processing, the officer asked Maria why she was there. Maria replied that she did not know and asked whether the officer could explain. According to Maria, the officer likewise stated that he did not know and could not see anything in the computer system explaining her situation. Thus, even after Maria's arrest, transportation in handcuffs, and commencement of ICE processing, the officer with whom she spoke could not identify to her the basis for her detention. (Maria Decl. ¶ 15.) Petitioner does not assert that this officer's statement conclusively establishes the absence of a custody determination. Rather, it reinforces the need for Respondents to produce the contemporaneous records establishing the asserted authority and procedures governing her confinement.

91. Maria is currently identified by ICE's Online Detainee Locator System as being held at the Adelanto ICE Processing Center in Adelanto, California. (Ex. N.)

92. Maria remains in federal physical custody, and the Warden of the Adelanto ICE Processing Center is responsible for implementing any order granting her release.

93. Petitioner requests preservation and production of the documents reflecting the arrest, initial processing, custody classification, transfer decision, and current detention authority.

**E.) Medical and Family Harm**

94. Maria personally declares that she suffers from anxiety, depression, kidney-related medical problems, fatty liver disease, prediabetes, and nerve pain. She also reports substantial fear and anxiety in small or confined spaces. (Maria Decl. ¶ 16.)

95. Maria requires medication for her health conditions. She did not bring those medications to the scheduled USCIS appointment because she reasonably believed she would complete biometrics and return home. (Maria Decl. ¶ 17.)

96. Maria fears that confinement, uncertainty, and interruption of necessary medications or medical care may worsen her physical and mental-health conditions. (Maria Decl. ¶¶ 18–19.)

97. Her husband's declaration corroborates the existence of her reported medical needs and his concerns regarding continuity of treatment. (Alvarado Decl. ¶¶ 19–20.)

98. Her transfer to Adelanto has made it particularly important to determine whether her medical history and prescriptions were communicated to the receiving facility and whether she has received timely evaluation and medically necessary care.

99. Maria is the primary caregiver of three United States citizen children. Her sudden confinement has removed the person upon whom they rely for meals, school activities, homework, daily supervision, and emotional support. (Maria Decl. ¶¶ 20–21; Alvarado Decl. ¶ 21.)

100. Juan works full time in a physically demanding position and has substantial mental-health and physical conditions of his own. He has relied upon Maria's assistance throughout the marriage. (Maria Decl. ¶ 22; Alvarado Decl. ¶¶ 22, 24–25.)

101. The emotional consequences of the separation were immediately apparent. Juan reports that the younger children became distressed and feverish after learning of their mother's arrest, while the youngest cried for hours and struggled to sleep. (Alvarado Decl. ¶ 26.)

102. Maria is deeply concerned about the effect of continued confinement on the children, particularly the oldest daughter, who has experienced emotional struggles concerning the prospect of separation. (Maria Decl. ¶ 21.)

103. Her absence also disrupts her property-management work, upon which her family's housing arrangement partially depends. (Maria Decl. ¶¶ 23–24; Alvarado Decl. ¶ 27.)

104. If released, Maria can return to her established family residence. Juan has committed to providing transportation, financial support, and assistance with lawful immigration reporting and proceedings. (Alvarado Decl. ¶ 29.)

105. Maria's family relationships, fixed residence, immigration-processing history, and voluntary attendance are substantial evidence relevant to any individualized assessment of flight risk and the adequacy of release conditions. (Maria Decl.; Alvarado Decl. ¶¶ 3–6, 28–29.)

## VI. GOVERNING STATUTORY FRAMEWORK

### A.) Section 1226(a) Governs the Relevant Category of Interior Detention

106. Congress has established distinct detention regimes under 8 U.S.C. §§ 1225, 1226, and 1231.

107. Section 1225 principally governs applicants for admission and specified categories of individuals subject to inspection and admission-related processing. Section 1231 generally governs detention associated with the statutory removal period following a final removal order.

108. Section 1226 governs the arrest and detention of qualifying noncitizens pending a decision on whether they are to be removed. Section 1226(a) permits discretionary detention or release on bond or conditional parole, subject to applicable statutory restrictions.

109. Maria last entered the United States without inspection in approximately September 2005, and ICE apprehended her in the interior of Los Angeles County in November 2026, more than twenty-one years later.

110. In *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165, 1172 (9th Cir. 2026), the Ninth Circuit held that noncitizens present without admission who are apprehended in the interior of the United States are subject to the detention framework of § 1226 rather than § 1225(b)(2)(A).

111. Maria's circumstances fall within the interior-arrest classification addressed by Rodriguez Vazquez. Her entry without inspection decades ago does not alone convert her present interior detention into mandatory detention under § 1225(b)(2)(A).

112. No prior removal order has been identified. On the present record, § 1231 does not supply the authority for her confinement. A November 12, 2026, a search of the Executive Office for Immigration Review's Automated Case Information System using Petitioner's A-Number, A234-926-448, and nationality of Mexico returned the result, "No case found for this A-Number." (Ex. O.)

113. No qualifying criminal ground for mandatory detention under § 1226(c) has been identified. Juan declares that, to his knowledge, Maria has no criminal history, and a California Department of Justice record search dated July 11, 2022, reported no California criminal-history record as of that date. (Ex. A ¶ 27; Ex. K.)

114. Petitioner therefore submits that the governing detention authority is § 1226(a), absent evidence establishing a separately applicable mandatory-detention provision.

115. The classification under § 1226(a) is the starting point of the present claim—not a substitute for examining whether the government lawfully exercised its detention authority.

**B.) Section 1226(a) Establishes a Discretionary, Warrant-Based Detention Framework**

116. Section 1226(a) authorizes the arrest and detention of eligible noncitizens pending a removal decision and expressly permits release under statutorily authorized conditions.

117. Section 236.1(b) of Title 8 of the Code of Federal Regulations governs administrative arrest warrants, including Form I-200, and restricts their issuance to designated immigration officials.

118. Separately, 8 U.S.C. § 1357(a)(2) permits warrantless arrests only where its independent statutory predicates are established.

119. An officer's belief that an individual may be removable does not eliminate the requirement for a warrant or satisfy the separate statutory exception requiring reason to believe the person is likely to escape before one can be obtained.

120. Under *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980), the statutory phrase "reason to believe" is equated with the constitutional probable-cause requirement.

121. Section 287.8(c)(2)(ii) independently requires an immigration arrest warrant unless officers have reason to believe the person is likely to escape before one can be obtained.

122. These requirements serve an essential purpose: limiting the Executive's authority to deprive a person of physical liberty through warrantless civil apprehension where the government's circumstances permit use of the ordinary administrative process.

**C.) The Initial Custody Determination Is a Separate Required Procedure**

123. Congress's choice to establish discretionary rather than automatic detention under § 1226(a) requires the responsible agency to exercise that discretion consistently with the regulations and due process.

124. Under 8 C.F.R. § 287.3(a), an individual arrested without a warrant under § 1357(a)(2) ordinarily must be examined by an appropriate officer other than the arresting officer, subject to the regulation's stated exception.

125. Section 287.3(c) establishes specified notification requirements for covered persons arrested without a warrant and placed in formal removal proceedings.

126. Section 287.3(d) requires a custody determination generally within forty-eight hours after arrest, subject to the regulation's emergency or extraordinary-circumstance exception.

127. Under 8 C.F.R. § 236.1(c)(8), an authorized officer exercises discretion concerning release in light of danger to persons or property and likelihood of appearance. Section 236.1(g) provides for the issuance of a Form I-286, Notice of Custody Determination.

128. Eligible individuals may seek immigration judge custody redetermination under 8 C.F.R. §§ 236.1(d), 1003.19, and 1236.1(d).

129. These protections have substantive significance. They are intended to distinguish individualized discretionary custody from an effectively automatic regime in which a person remains imprisoned merely because the government asserts removability.

130. In *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022), the Ninth Circuit recognized the extensive procedural protections established by § 1226(a) and its implementing regulations.

131. More recently, *Sanchez Marquez v. Warden*, No. 5:26-cv-05368-MBK, Dkt. 13, at 5–15 (C.D. Cal. Oct. 1, 2026), explained that an initial individualized custody determination is a critical safeguard ensuring that physical detention is actually justified.

132. As of the preparation of this Petition, Maria has been detained only since November 10, 2026. Petitioner does not assert that the ordinary forty-eight-hour period has necessarily expired. She seeks immediate disclosure of any custody determination already made, compliance with the applicable procedures, and relief from any present detention independently established to lack lawful authorization.

## **VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

133. Petitioner has not requested a bond hearing before an immigration judge. Exhaustion of administrative remedies in § 2241 detention litigation is generally prudential rather than jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

134. The Ninth Circuit permits courts to excuse prudential exhaustion where administrative remedies would be inadequate or ineffective, pursuit would be futile, or irreparable injury would result. *Laing*, 370 F.3d at 1000. Relevant considerations include whether agency expertise is necessary to develop the record, whether excusing exhaustion would encourage deliberate bypass of an

administrative scheme, and whether administrative review is likely to correct the asserted error. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

135. Petitioner's principal claims concern the legality of the November 10, 2026 arrest and compliance with initial detention procedures, including whether ICE officers lawfully dispensed with an administrative warrant under 8 U.S.C. § 1357(a)(2) and whether the original custody determination satisfied applicable statutory and constitutional requirements. These claims are distinct from a request that an immigration judge exercise discretion to grant bond. A conventional bond hearing evaluates whether a noncitizen should remain detained based on danger, flight risk, and the applicable custody standards. It does not necessarily adjudicate the lawfulness of the initial arrest or the validity of the original deprivation of liberty.

136. District courts in this Circuit have excused prudential exhaustion on this basis. In *Barrios Chan*, the Central District excused exhaustion notwithstanding the availability of an initial bond hearing, reasoning that subsequent bond proceedings would not adequately remedy the challenged original deprivation of liberty. No. 5:26-cv-04820-ACCV, Dkt. 12, at 3–4. Similarly, in *Xiaodong Ma v. Warden of Adelanto ICE Processing Center*, No. 5:26-cv-05707, Dkt. 9 (C.D. Cal. Oct. 9, 2026), the district court excused exhaustion of the constitutional claim despite the government's assertion that an initial bond hearing was available. The same distinction applies here. Petitioner's claim is not simply that she should receive a favorable bond determination; it is that her initial arrest and resulting custody lacked lawful justification.

137. Requiring Petitioner to exhaust a separate discretionary bond process before obtaining review of her independent statutory and constitutional claims would not provide an adequate remedy for the asserted illegality. Continued detention while pursuing that process would perpetuate the very deprivation of liberty that Petitioner alleges began without lawful authority. That deprivation is particularly acute here: Petitioner's detention has immediately deprived her children of their primary caregiver and created serious concerns regarding medication access and medical care. (Maria Decl. ¶¶ 13–21; Alvarado Decl. ¶¶ 19–27.) The case also presents an immediate need to obtain government records concerning the legal basis for the apprehension and the current custody determination.

138. Accordingly, Petitioner respectfully requests that the Court excuse prudential exhaustion as to her independent arrest and initial-custody claims. Alternatively, should the Court conclude that additional administrative custody proceedings are appropriate, Petitioner requests that the Court order prompt individualized review while retaining jurisdiction over her independent challenge to the initial arrest. Petitioner does not waive the opportunity to seek administrative custody review and requests that Respondents promptly disclose any existing custody determination and available mechanism for review.

## VIII. IMMEDIATE RELEASE IS THE APPROPRIATE HABEAS REMEDY

139. The traditional function of habeas corpus is to secure release from unlawful custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitioner requests release as the primary remedy because her challenge concerns the authority for the initial arrest and the lawfulness of the resulting detention, not merely the availability of a future discretionary bond determination.

140. An order directing only a future bond hearing would not determine whether immigration officers complied with 8 U.S.C. § 1357(a)(2) when they initially deprived Petitioner of her liberty, nor would it necessarily remedy the failure to conduct a required initial custody determination. An ordinary bond hearing primarily evaluates whether continued detention is justified by danger, flight risk, and applicable custody standards. It does not necessarily adjudicate whether the original arrest complied with the statutory warrantless-arrest requirements, whether officers possessed the necessary contemporaneous escape-risk justification, or whether ICE performed the initial custody procedures required by regulation.

141. District courts in this Circuit have ordered immediate release in comparable circumstances. In *Barrios Chan*, the Central District ordered immediate release following an unlawful warrantless immigration arrest. No. 5:26-cv-04820-ACCV, Dkt. 12, at 6–7. In *Sanchez Marquez*, the court ordered immediate release after finding that ICE failed to establish the required arrest justification and initial custody review. No. 5:26-cv-05368-MBK, Dkt. 13, at 12–16. In *Torres Vidal v. Mullin*, No. 5:26-cv-03582-SP, Dkt. 11 (C.D. Cal. Sept. 22, 2026), the court granted habeas relief and ordered immediate release following a procedural due process violation involving immigration detention after an enforcement operation targeting another individual. In *Qu*, No. 5:26-cv-05419-

CTS, Dkt. 10, the court ordered release where the government failed to defend a warrantless-arrest claim despite acknowledging the availability of an ordinary bond hearing. These decisions demonstrate that immediate release is an available and appropriate habeas remedy where civil immigration confinement rests upon an unlawful initial arrest or a material failure to comply with procedures necessary to justify custody.

142. If the developed record establishes the absence of lawful arrest authority and the failure to provide the individualized custody process necessary to support present confinement, release is the appropriate primary remedy. Petitioner's longstanding residence, cooperation during the encounter, stable home, work history, and available family connections further support a remedy that restores her liberty while permitting immigration proceedings to continue. Release from detention would not terminate the government's authority to pursue removal proceedings or relieve Petitioner of her obligation to attend immigration court and comply with lawful requirements. Juan has committed to providing housing, transportation, financial support, and assistance with compliance. (Alvarado Decl. ¶ 29.) Petitioner's longstanding address, family relationships, approved immigrant petition, and demonstrated willingness to attend USCIS appointments are substantial considerations supporting release under reasonable conditions. (Maria Decl. ¶ 8; Alvarado Decl. ¶¶ 3–6, 28–29; Exs. B–J.)

143. Petitioner accordingly requests a writ directing Respondents to release her immediately. Alternatively, should the Court determine that immediate release is not warranted, Petitioner requests a prompt individualized custody hearing under § 1226(a), with a deadline fixed by the Court, meaningful consideration of family support, medical needs, alternatives to detention, and ability to pay, and appropriate relief if Respondents fail to comply. Petitioner preserves her request for additional constitutional safeguards where justified by the facts, while recognizing that applicable Ninth Circuit authority, including *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022), governs ordinary initial custody procedures.

## **IX. REQUEST FOR PRODUCTION AND PRESERVATION OF MATERIAL CUSTODY EVIDENCE**

144. Respondents possess documents, communications, and recordings directly relevant to determining the legality of Maria's arrest and continued detention. Petitioner requests production of any Form I-200, including records establishing its preparation, authorization, approval, issuance, and execution; Form I-213; Form I-286; Notice to Appear; contemporaneous assessments of flight risk or likelihood of escape; initial and subsequent custody determinations; and all relevant arrest, processing, and transfer records.

145. Petitioner further requests the preservation and production of available USCIS facility surveillance footage, body-worn-camera recordings, arrest reports, transportation records, and communications concerning the decision to identify, apprehend, and detain Maria. This request extends to USCIS appointment-processing records, internal communications, records concerning the handling or examination of Maria's identification documents, documentation reflecting when ICE officers entered or were present inside the USCIS facility, and communications between USCIS employees and ICE personnel preceding or relating to her apprehension.

146. The circumstances described in Maria's declaration raise material questions concerning what information the officers possessed before approaching her, how she was identified for apprehension, whether the decision to arrest her had been made in advance, and whether any individualized assessment or lawful determination preceded her detention. (Maria Decl. ¶¶ 4–5.) Although Petitioner does not presently assert that unlawful coordination between USCIS and ICE has been conclusively established, the sequence of events warrants examination of the communications, decisions, and records underlying her arrest, particularly where those materials are within Respondents' possession or control and bear directly on whether her apprehension and subsequent detention complied with applicable statutory, regulatory, and constitutional requirements.

147. The circumstances of the encounter also warrant preservation of evidence bearing on the objective basis for the officers' initial seizure and their selection of Petitioner. The equal-protection component of the Fifth Amendment prohibits federal officers from intentionally discriminating on the basis of race or ethnicity. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Whren v. United States*, 517 U.S. 806, 813 (1996). Discriminatory purpose may be established through direct or

circumstantial evidence, including the sequence of events, relevant enforcement practices, departures from ordinary procedures, and contemporaneous statements. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265–68 (1977). Petitioner does not presently allege that discriminatory intent has been established. Rather, she submits that the circumstances warrant preservation of relevant evidence and, if good cause is demonstrated, limited discovery concerning the basis for the seizure. She expressly preserves the ability to seek leave to amend this Petition if subsequently obtained evidence establishes a good-faith factual basis for an independent discriminatory-enforcement claim under the equal-protection component of the Fifth Amendment. No separate finding of intentional discrimination is requested on the present record.

148. If material factual disputes remain after production, Petitioner requests an expedited evidentiary hearing and appropriately limited discovery upon a showing of good cause. See Rule 6(a), Rules Governing Section 2254 Cases, applicable to appropriate § 2241 proceedings through Rule 1(b); *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997).

## X. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2), 8 C.F.R. §§ 236.1(b) and 287.8(c)(2)(ii), and the Fourth Amendment: (Unlawful Warrantless Civil Immigration Arrest and Resulting Detention)**

149. Petitioner re-alleges and incorporates by reference all preceding paragraphs of this Petition as if fully set forth herein.

150. Section 1226(a) establishes a warrant-based framework for civil immigration arrest and detention pending removal. 8 C.F.R. § 236.1(b) governs administrative warrants (Form I-200). Congress authorized limited warrantless arrests under 8 U.S.C. § 1357(a)(2) only when officers have reason to believe both that the person is present in violation of law and is likely to escape before a warrant can be obtained. 8 C.F.R. § 287.8(c)(2)(ii) imposes the same requirement. Probable cause of removability alone does not establish likelihood of escape. *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980); *Arizona v. United States*, 567 U.S. 387, 407–08 (2012). The exception requires particularized pre-arrest facts, not post-hoc rationalizations or status-based assumptions.

151. USCIS directed Maria to appear for biometrics on November 10, 2026, at 10:00 a.m. for her pending I-601A application. Government records reflected her identity, address, and appointment. (Maria Decl. ¶¶ 2–3; Exs. B–G.) She and her husband arrived voluntarily at approximately 9:50 a.m. despite warnings of ICE activity. (Maria Decl. ¶¶ 2–3; Alvarado Decl. ¶¶ 4–6.) A security employee directed her to turn off her phone; she complied. While waiting, a USCIS employee took her documents into an office. She had not yet been fingerprinted or photographed. (Maria Decl. ¶ 4.) Three ICE officers then entered, called her by name, directed her into the office, and instructed her to sit. An officer informed her she was under arrest. Officers showed no warrant, identified no specific legal grounds, and asked no questions about her individual circumstances or flight risk. (Maria Decl. ¶¶ 5–7.) Maria remained calm, did not resist or flee, and complied. (Maria Decl. ¶ 8.) An officer later spoke with Juan but identified no individualized escape-risk justification. (Maria Decl. ¶¶ 10–11; Alvarado Decl. ¶¶ 10–14.)

152. These facts undermine any claim that the statutory exception applied. The government scheduled the appearance, possessed her records, and knew when and where she would appear. She voluntarily presented herself. (Maria Decl. ¶¶ 2–5, 8; Exs. B–G.) In *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, Dkt. 738 (C.D. Cal. Sept. 2, 2026), the court preliminarily enjoined warrantless civil immigration arrests lacking pre-arrest individualized escape-risk determinations and required documentation of particularized facts. To the extent that injunction governed, Respondents were required to comply.

153. Maria declares that no officer showed or explained a warrant. She remains unaware whether any warrant existed at the time of arrest. (Maria Decl. ¶¶ 6–7.) Any warrant, issuance records, and contemporaneous escape-risk determination are within Respondents' exclusive possession. A warrant issued after arrest cannot retroactively validate the seizure. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

154. The Fourth Amendment independently prohibits unreasonable seizures. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *California v. Hodari D.*, 499 U.S. 621, 626 (1991). An officer called Maria by name, directed her into a separate office, ordered her to sit, and then arrested her. She complied immediately and was later handcuffed and transported. (Maria Decl. ¶¶ 5, 12;

Alvarado Decl. ¶¶ 8–9.) Petitioner preserves the argument that any investigative detention preceding the arrest required individualized reasonable suspicion under 8 C.F.R. § 287.8(b)(2). Petitioner requests preservation and production of USCIS surveillance, body-worn-camera footage, relevant communications, and ICE reports.

155. The arrest occurred inside a federal application-support facility at a scheduled appointment, not during a traffic stop. District courts in this District have ordered release in analogous cases where the government failed to substantiate compliance with § 1357(a)(2) or related procedures. See *Qu v. Janecha*, No. 5:26-cv-05419-CTS, Dkt. 10 (C.D. Cal. Oct. 9, 2026); *Mejia v. Warden*, 2026 WL 3019449 (C.D. Cal. Oct. 7, 2026); *Pang v. Warden*, 2026 WL 2925852 (S.D. Cal. Sept. 29, 2026); *Petrashkevich v. Mullin*, 2026 WL 2337897 (C.D. Cal. Aug. 12, 2026); *Barrios Chan v. Acting Warden*, No. 5:26-cv-04820-ACCV, Dkt. 12 (C.D. Cal. Sept. 25, 2026); *Sanchez Marquez v. Warden*, No. 5:26-cv-05368-MBK, Dkt. 13 (C.D. Cal. Oct. 1, 2026).

156. The restrictions on warrantless civil immigration arrests are substantive limits on executive authority. After the arrest, ICE handcuffed Maria, transported her to downtown Los Angeles, processed her, and continued her custody at Adelanto. (Maria Decl. ¶¶ 12, 14–15; Ex. N.) Absent a valid pre-arrest warrant or compliance with the individualized exception, and absent a sufficient independent basis for continued custody, her confinement is subject to habeas relief.

**SECOND CLAIM FOR RELIEF**

**Violation of 8 U.S.C. § 1226(a), 8 C.F.R. §§ 236.1(c), 236.1(g), 287.3(a), 287.3(c), 287.3(d), 1003.19, and 1236.1, and the Fifth Amendment (Failure to Establish Compliance With Required Initial Custody Procedures and Unlawful Application of Mandatory Detention)**

157. Petitioner re-alleges and incorporates by reference all preceding paragraphs.

158. Section 1226(a) provides the discretionary detention framework for noncitizens apprehended in the interior pending a removal decision. In *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026), the Ninth Circuit held that individuals who entered without inspection and were later arrested in the interior generally fall under § 1226(a), not mandatory detention under § 1225(b)(2)(A).

159. Maria last entered without inspection in approximately September 2005 and was arrested more than twenty-one years later at a USCIS facility. She has more than twenty years of residence, no criminal history, a stable home, a U.S. citizen spouse, and three dependent U.S. citizen children. (Maria Decl. ¶ 9; Alvarado Decl. ¶¶ 2, 27–29; Ex. K.) An EOIR Automated Case Information System search on November 12, 2026, returned "No case found for this A-Number." (Ex. O.) On the present facts, her detention is governed by § 1226(a) unless Respondents identify a valid mandatory-detention provision. Categorical application of § 1225(b)(2)(A) solely because of her prior entry without inspection conflicts with *Rodriguez Vazquez*.

160. The regulations require examination, custody determination, notification, and review following covered civil immigration arrests. Under 8 C.F.R. § 287.3(a), a person arrested without a warrant ordinarily must be examined by an officer other than the arresting officer. Section 287.3(c) sets notice requirements. Section 287.3(d) generally requires an initial custody determination within forty-eight hours, subject to limited exceptions. Maria was arrested on November 10, 2026; the ordinary period therefore expired approximately on November 12, 2026. Respondents must establish when any determination occurred and whether an exception was invoked.

161. Under 8 C.F.R. § 236.1(c)(8), the responsible officer exercises discretion based on danger and likelihood of appearance. Section 236.1(g) addresses Form I-286. Sections 1003.19 and 1236.1(d) govern immigration-judge custody redetermination.

162. Maria states that arresting officers asked no questions about her individual circumstances and explained no assessment of danger or flight risk. She remained cooperative and did not flee. (Maria Decl. ¶¶ 6–8.) At the downtown processing facility, an officer entered her information, fingerprinted and photographed her, then told her he could not identify any explanation for her detention in the system. (Maria Decl. ¶¶ 12, 14–15.) ICE's subsequent processing and transfer to Adelanto show affirmative continuation of custody. (Maria Decl. ¶¶ 12–15; Ex. N.) Respondents should identify the official responsible for the initial custody decision, the date and time, the statutory authority, any Form I-286, and records of compliance.

163. This information is material. Maria has long-established residence, three U.S. citizen children, a citizen spouse, community ties, an active immigration history, no criminal history, and an available

release plan. (Maria Decl. ¶¶ 9, 20–24; Alvarado Decl. ¶¶ 21–29; Exs. B–M.) In *Sanchez Marquez*, No. 5:26-cv-05368-MBK, Dkt. 13, at 10–15, the court ordered immediate release after the government failed to establish compliance with initial custody procedures.

164. Petitioner requests production of the contemporaneous initial custody records. If Respondents cannot establish compliance with governing procedures or a sufficient independent legal basis for present confinement, Petitioner requests immediate release. Alternatively, she requests an expedited individualized § 1226(a) custody hearing with required safeguards and meaningful consideration of release conditions.

**THIRD CLAIM FOR RELIEF**

**Violation of the Fifth Amendment to the United States Constitution (Procedural Due Process — Unconstitutional Deprivation of Established Community Liberty Without Adequate Process)**

165. Petitioner re-alleges and incorporates by reference all preceding paragraphs.

166. The Fifth Amendment prohibits the federal government from depriving any person of liberty without due process of law. Its protections extend to noncitizens who are physically present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 690, 693 (2001). The procedures required by due process are evaluated under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), by balancing (1) the private liberty interest affected, (2) the risk of erroneous deprivation and the probable value of additional safeguards, and (3) the government's legitimate interests, including any administrative burden. See also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022).

167. Maria's private liberty interest is substantial and long-established. She has lived continuously in the United States for more than twenty-one years. She has been married to a United States citizen since April 28, 2007, and is the primary caregiver of their three United States citizen children, ages approximately 16, 12, and 7. Her daily responsibilities include preparing meals, managing school activities and homework, providing transportation and supervision, and supplying the children's primary emotional support. (Maria Decl. ¶¶ 9, 20–21; Alvarado Decl. ¶¶ 2, 21–23; Exs. H–J.) She has worked for approximately fifteen years as a property manager at the apartment complex where the family resides, coordinating maintenance, addressing residents' concerns, and contributing directly to the family's housing stability. (Maria Decl. ¶¶ 23–24; Alvarado Decl. ¶ 27.) She also

provides essential daily emotional and practical support to her husband, who suffers from Major Depressive Disorder, Generalized Anxiety Disorder, and chronic physical pain. (Maria Decl. ¶ 22; Alvarado Decl. ¶¶ 24–25.) These are not speculative or generalized ties. They are documented, longstanding, and central to the daily functioning of a United States citizen household. Her approved I-130 petition, National Visa Center processing, and pending I-601A application further confirm that the government has possessed detailed identifying information about her and her immigration process for years. (Maria Decl. ¶¶ 2–4, 9; Alvarado Decl. ¶ 3; Exs. B–G.)

168. The risk of erroneous deprivation was high, and the probable value of additional safeguards is correspondingly significant. Maria voluntarily appeared for a government-scheduled biometrics appointment. She complied with the security employee's instructions, turned off her phone, and waited for processing. When ICE officers called her by name, directed her into a separate office, and ordered her to sit, she complied immediately. She did not attempt to flee, resist, or refuse any instruction. (Maria Decl. ¶¶ 2–8.) Before taking her into custody, the officers provided no individualized explanation that she posed a danger or flight risk, nor did they ask any questions about her circumstances, residence, family, or willingness to appear. (Maria Decl. ¶¶ 6–7.) After she was handcuffed and transported to downtown Los Angeles, the officer who processed her stated that he could not identify any explanation for her detention in the computer system. (Maria Decl. ¶¶ 14–15.) No contemporaneous individualized custody assessment has been produced. Meaningful pre- or post-deprivation process would have permitted consideration of her twenty-one years of residence, fixed address, three United States citizen children, citizen spouse, lack of criminal history, voluntary compliance with the appointment, medical conditions, and available family support. The absence of that process created a substantial risk that detention was imposed without regard to whether it was actually necessary.

169. The government's legitimate interests in enforcing immigration laws, securing appearance, and protecting public safety do not eliminate its obligation to provide constitutionally adequate procedures before or promptly after depriving a person of established community liberty. Here, the government itself scheduled the appointment weeks in advance and possessed Maria's identity, address, and application history. She voluntarily appeared and complied with every instruction.

(Maria Decl. ¶¶ 2–8; Ex. B.) No particularized emergency or flight risk has been identified. She has a fixed residence, extensive family responsibilities, and a United States citizen spouse who has committed to providing housing, transportation, financial support, and assistance with all lawful reporting requirements. (Maria Decl. ¶¶ 9, 20–24; Alvarado Decl. ¶ 29.) Under these circumstances, the administrative burden of providing advance notice or a prompt, meaningful individualized determination is minimal relative to the liberty interest at stake.

170. Recent decisions in this District confirm that the constitutional analysis turns on the strength of the individual's established community liberty and the circumstances of the seizure. In *Lin v. Mullin*, No. 5:26-cv-04883-DTB (C.D. Cal. Sept. 15, 2026), and *Ma v. Warden of Adelanto ICE Processing Center*, No. 5:26-cv-05707-KK-DFM (C.D. Cal. Oct. 8, 2026), the courts ordered immediate release after finding that warrantless arrests at scheduled USCIS biometrics appointments violated procedural due process because constitutionally required advance process had not been provided. By contrast, *He v. Janecka*, No. 5:26-cv-05321-KES (C.D. Cal. Sept. 23, 2026), and *Hu v. Mullin*, No. 5:26-cv-05539-ADS (C.D. Cal. Oct. 30, 2026), ordered bond hearings rather than immediate release for first-time detainees. Maria's circumstances align with *Lin* and *Ma*, not *He* and *Hu*. She has approximately twenty-one years of continuous residence—far longer than a recent entrant—three dependent United States citizen children for whom she is the primary caregiver, a longstanding marriage to a citizen, stable employment that supports the family's housing, and a multi-year documented history of affirmatively pursuing immigration benefits. These factors establish a profound private interest in continued community liberty and a correspondingly high risk of erroneous deprivation when that liberty is taken without individualized process at a voluntary government appointment. A subsequent bond hearing, while potentially available, does not cure the constitutional defect in the initial deprivation where the individual possesses such deep and established ties and the seizure occurred without any pre-arrest individualized assessment.

171. Applying the *Mathews* factors, Petitioner's established community liberty was deprived without constitutionally adequate individualized process. Her voluntary compliance with a scheduled appointment, the complete absence of any individualized explanation of danger or flight risk, and the processing officer's subsequent inability to identify any basis for detention reinforce the need

for judicial intervention. Respondents have not produced records establishing that a lawful, individualized custody determination was made in accordance with constitutional requirements.

172. Petitioner requests immediate habeas release if the Court finds that constitutionally adequate advance process was required or that her present custody otherwise violates procedural due process. Alternatively, she requests an expedited, meaningful custody hearing with constitutionally required safeguards, including meaningful consideration of her long-term residence, family ties, medical needs, and available alternatives to detention, together with timely judicial review of any continuing violation.

## FOURTH CLAIM FOR RELIEF

### Violation of the Fifth Amendment to the United States Constitution (Substantive Due Process — Arbitrary and Unjustified Civil Immigration Detention)

173. Petitioner re-alleges and incorporates by reference all preceding paragraphs.

174. Civil immigration detention must serve legitimate regulatory objectives—principally ensuring appearance at immigration proceedings and protecting the community—and may not operate as punishment or as arbitrary confinement unrelated to those objectives. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003).

175. On the present record, Respondents have not identified any individualized regulatory justification for Maria's continued physical confinement. The available evidence shows no criminal history, no prior removal order, no missed government appointments, no attempted flight, and no particularized danger or escape risk. (Maria Decl. ¶ 9; Alvarado Decl. ¶¶ 12–13, 27; Ex. K.) Instead, the only explanation offered at the time of arrest was that she was present in the United States unlawfully. (Alvarado Decl. ¶ 12.) That assertion, standing alone, does not establish that physical detention is necessary to secure her appearance or protect the public.

176. Maria's circumstances affirmatively cut against any unexplained need for confinement. She has resided continuously in the United States for more than twenty-one years, maintains a fixed home, is married to a United States citizen, and is the primary caregiver of three United States citizen children. She voluntarily attended a government-scheduled USCIS biometrics appointment and complied with every instruction given by security personnel and ICE officers. (Maria Decl. ¶¶ 2–

9, 20–24; Alvarado Decl. ¶¶ 3–6, 21–29; Exs. B–J.) Her citizen spouse has committed to providing housing, transportation, financial support, and assistance with all lawful immigration requirements. (Alvarado Decl. ¶ 29.) These facts demonstrate the availability of less restrictive alternatives that would adequately protect the government's legitimate interests.

177. The absence of any contemporaneous individualized assessment further supports the claim. Arresting officers asked no questions about Maria's residence, family ties, medical conditions, or willingness to appear, and provided no explanation of danger or flight risk. After her transfer to the downtown Los Angeles processing facility, the officer who fingerprinted and photographed her stated that he could not identify any reason for her detention in the computer system. (Maria Decl. ¶¶ 6–7, 14–15.) While these statements do not conclusively establish that no internal custody decision occurred, they confirm that Respondents have not yet produced any record demonstrating an individualized determination that continued detention is necessary to serve a legitimate regulatory purpose.

178. To the extent Respondents continue Maria's confinement without a legitimate individualized regulatory justification, without adequate consideration of reasonable alternatives, or in a manner arbitrary and excessive in relation to the government's lawful objectives, the detention violates substantive due process. Petitioner requests immediate habeas release if the Court determines that her present confinement lacks a constitutionally sufficient regulatory justification. Alternatively, she requests an expedited individualized custody determination addressing whether continued detention is necessary and whether less restrictive conditions can adequately protect the government's interests.

## XI. PRAYER FOR RELIEF

WHEREFORE, Petitioner Maria del Rosario Torres Cervantes respectfully requests that this Court:

a. Assume jurisdiction under 28 U.S.C. § 2241;

b. Issue an expedited Order to Show Cause pursuant to 28 U.S.C. § 2243 requiring Respondents to substantiate the legal and factual basis for Petitioner's arrest and continuing detention, produce any administrative arrest warrant, Form I-213, Form I-286, Notice to Appear, contemporaneous escape-risk documentation, and other records necessary to determine compliance with the governing statutory and regulatory requirements;

c. Grant the Petition for Writ of Habeas Corpus and order the immediate release of Maria del Rosario Torres Cervantes, A234-926-448, from the Adelanto ICE Processing Center, restoring her pre-arrest community liberty subject only to lawful and reasonable conditions the Court finds necessary;

d. Enjoin Respondents from re-detaining Petitioner on the challenged custody basis without complying with applicable statutory and constitutional requirements;

e. Alternatively, if immediate release is denied, order a prompt individualized custody hearing pursuant to § 1226(a), within seven days or a shorter period warranted by the circumstances, with all applicable constitutional safeguards;

f. Temporarily restrain any further transfer outside the Central District of California;

g. Require preservation of relevant surveillance recordings, arrest reports, warrant records, custody documents, and communications, and the return of personal documents and property confiscated upon arrest, subject to lawful retention requirements;

h. Require an expedited compliance report following any order granting relief;

i. Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

j. Grant such other and further relief as the Court deems just and proper.

I affirm, under penalty of perjury, that the foregoing is true and correct.

Dated: November 12, 2026

**ATTORNEY FOR PETITIONER**

Osvaldo A. Vargas
VARGAS LAW FIRM
100 N. Citrus St. Suite# 505
West Covina, CA 91791
Phone: (626) 269-3432
Fax: (626) 364-7597
ovargaslaw@gmail.com
*Pro Bono Counsel for Petitioner*

## XII. EXHIBIT LIST

Petitioner anticipates attaching the following exhibits:

- Declaration of Maria del Rosario Torres Cervantes
- Exhibit A: Declaration of Juan Francisco Alvarado
- Exhibit B: I-797C Biometrics Appointment Notice
- Exhibit C: I-601A Receipt Notice
- Exhibit D: I-130 Approval Notice
- Exhibit E: I-131F Receipt Notice
- Exhibit F: National Visa Center Case Summary
- Exhibit G: National Visa Center Payment Receipt
- Exhibit H: Certificate of Naturalization of Juan Francisco Alvarado
- Exhibit I: Marriage Certificate
- Exhibit J: Children's Birth Certificates
- Exhibit K: CA DOJ Criminal-History Response
- Exhibit L: Educational and Community Certificates
- Exhibit M: Family Photographs
- Exhibit N: ICE Online Detainee Locator Record
- Exhibit O: EOIR Automated Case Information for Petitioner

# VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent the Petitioner, Maria del Rosario Torres Cervantes and submit this verification on her behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: November 12, 2026

**ATTORNEY FOR PETITIONER**

Osvaldo A. Vargas
VARGAS LAW FIRM
100 N. Citrus St. Suite# 505
West Covina, CA 91791
Phone: (626) 269-3432
Fax: (626) 364-7597
ovargaslaw@gmail.com
*Pro Bono Counsel for Petitioner*